KITCHELL, Adm'r, *vs.* JACKSON, et al., Adm'rs.

[CONTEST IN PROBATE COURT ON CONFIRMATION OF SALE OF REAL ESTATE OF DECEDENT FOR DISTRIBUTION.]

1. *Sale of lands by administrator; when will be vacated.*—A sale of lands by an administrator for distribution, under an order of the probate court, by which the administrator was authorized to sell the lands for CASH, and which sale was made on 1st February, 1865, and the lands bid off for $18,120.00, and paid for in Confederate treasury notes, will be vacated on application to have the sale confirmed, when it appears that the lands sold, at the time of the sale, were worth $8,000 in gold, and the Confederate currency thus paid for it by the purchaser, was not worth much over $346.00.

2. *Cash; meaning of, as used in the statute.*—The word *cash*, in such an

order, and in the statute, means a legal tender currency or *its* equivalent.

APPEAL from Probate Court of Marengo.
TRIED before Hon. THOS. J. WOOLF.

The facts upon which the opinion of the court is based are sufficiently set out therein.

FERRELL & WATTS, for appellants.
RICE, SEMPLE & GOLDTHWAITE, for appellee.

PETERS, J.—This case arose on an application for the sale of lands by an administrator for distribution. The proceedings were commenced by petition in the probate court of Marengo county, on November 8th 1863. The order of court for the sale of the lands mentioned in the petition was granted on the second day of January, 1865, and the sale was required to be made for *cash.* The petition was filed by Charles Irby, "administrator of the estate of James M. Rembert, deceased." The sale was made on the first day of February, 1865, when D. B. Jackson became the purchaser of a portion of said lands for the sum of $18,120.00. This sum was paid to the administrator, Irby, in Confederate treasury notes at, or immediately after the sale. Irby failed to make report of this sale until the 28th day of August, 1866, when he reported it and asked to have it confirmed. But before this report was made Irby had ceased to be administrator of the estate of said Rembert, and Frank N. Kitchell had been appointed administrator *de bonis non* of said estate, to succeed him.

On the hearing of the report of Irby to confirm the sale to Jackson, Kitchell, as administrator *de bonis non* of Rembert, appeared and contested its confirmation. Thereupon Jackson, the purchaser under the order to sell granted on the petition of Irby, and under the sale made by Irby, appeared in the probate court and was permitted to be made a party to the proceedings, on the report to confirm the sale. This sale, after hearing the matters alleged on both sides, was confirmed by the probate court, at a regu-

lar term thereof, on April 8th, 1867. To this order of confirmance, and the proceedings which led to it, Kitchell, as administrator, excepted, and now brings the proceedings on the report for confirmation of the sale and the order of the probate court here, for review and correction. There are many objections and exceptions apparent on the face of the record, which this court might re-examine, without bill of exceptions, but this is unnecessary, in the view we take of this cause, as many of them can not again arise in the future progress of the case in the court below. Rev. Code, § 2250.

The statutes authorizing the sale of the lands of a deceased person, for the purpose of division amongst the heirs or devisees, requires such sale to · be made for cash or upon a credit, and " confirmed, and titles made to the purchaser on the payment of the purchase money, in all respects as upon a sale of lands by an executor or administrator, under an order of the probate court for payment of debts."—Revised Code, §§ 2228, 2079, 2080, 2090.

Here the order was to sell for *cash*. The purchaser, Jackson, bid for one tract $17,000,00, and for another tract $1,120.00 ; making an aggregate of $18,120.00. This sum, by the terms of the sale, was required to be paid in cash. *Cash*, in the sense used in the statute and in the order of the court authorizing this sale, means money ; that is, such a currency as was good as a legal tender in payment of debts under the constitution and laws of the United States, or such a currency as was convertible into such a legal tender currency, without loss to the estate to which it was paid. It does not mean the "war currency" of the so-called Confederate States.—Index to Rev. Code, p. 891, § 2134. This was not cash, and a payment in it was not a compliance with the terms of this sale.—Const. U. S., Art. 1, § 10.

Upon the contest, to have the sale confirmed, the proofs show that the currency paid for the lands sold was not worth more than $346 in gold at the time it was paid, and that the lands sold were worth in 1861 and in 1865, and all through the year 1866, as much as $8,000 in gold; near

twenty times as much as was paid for them by Jackson. Such a proceeding ought not to have been confirmed.

The order of the probate court, confirming such sale, was erroneous. It is therefore reversed, and the cause is remanded, with directions to the court below to vacate said sale, made on the first day of February, 1865, by said Irby, administrator of the estate of said James M. Rembert, deceased, to said Jackson, and to proceed in the further administration of said estate in conformity with this opinion and as required by law.

The said Jackson, and said Irby, appellees in this court, will pay the costs of this appeal in this court, and in the court below.